UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN SORRENTINO,<br><br>      Plaintiff<br><br>      v.<br><br>UYEN TRAN, NICOLLE MELANIE ALLEN, AND FARIYDA MULRAIN, AS MEMBERS OF THE MASSACHUSETTS CONTRIBUTORY RETIREMENT APPEAL BOARD<br><br>      Defendants | CIVIL ACTION No. 1:24-CV-10944-DJC |

**AMENDED COMPLAINT**

Plaintiff, John Sorrentino ("**Plaintiff**" or "**Mr. Sorrentino**"), by and through his undersigned counsel, Locke Lord LLP, for his complaint against defendants, each members of the Massachusetts Contributory Retirement Appeal Board ("**CRAB**") being sued in their official capacities (collectively, "**Defendants**"), avers as follows:

## I.    INTRODUCTORY STATEMENT

1.    For almost twenty (20) years, Mr. Sorrentino provided faithful service to the Commonwealth of Massachusetts. During that time, he made contributions to Massachusetts' State Employees Retirement System ("**SERS**"), and the Massachusetts State Board of Retirement ("**Board**") repeatedly and unambiguously confirmed with him that, following his retirement, he would receive SERS retirement benefits. Mr. Sorrentino retired in November 2018 and, the day *after* his retirement, the Board again confirmed his entitlement to benefits. Months later, however, and before even a single retirement payment had been made to Mr. Sorrentino, the Board abruptly changed course, contending that Mr. Sorrentino is entitled to *no retirement benefits.* Now his efforts to address what he contends is an erroneous determination

by the Board hopelessly has bogged down in an extraordinarily lengthy administrative appeals process with no apparent end in sight, to wit:

Mr. Sorrentino first grieved the Board's decision denying him benefits in February of 2019. It then took over three years before the Board conducted a two-hour evidentiary hearing on Mr. Sorrentino's grievance, and another eight months thereafter to deny it. In accordance with CRAB's rules, Mr. Sorrentino then filed an administrative appeal, which appeal will be determined on the briefs submitted, and without a hearing. Yet, despite the passage of over a year, no action has been taken on the appeal. Most troubling is the fact that there is no definitive timeline for the hearing of Mr. Sorrentino's administrative appeal. Indeed, his case is number 142 in the appellate queue and CRAB only convenes once per month for the purpose of deciding appeals like his. Thus, it appears highly likely that Mr. Sorrentino's appeal will not be adjudicated at any point in the reasonably foreseeable future.

Justice delayed is, of course, justice denied. Retirees have a legitimate right to expect that they will receive retirement benefits at a point in their lives when they have some reasonable prospect of enjoying them, not at some unforeseeable time in the future. And, while it is understandable that administrative processes "take time," undeterminable and seemingly interminable delays are not only unfair but, at some point, they amount to a denial of procedural due process. This is one such case.

Mr. Sorrentino does not seek an unfair advantage with respect to his SERS benefits. He is not requesting from this Court, for example, a favorable merits-based decision of his administrative appeal. Instead, he asks the Court only for that to which he is indisputably entitled to, *i.e.*, "due process" – the opportunity to have his appeal determined in a reasonable manner **and at a reasonable time**. His principal request is, therefore, limited to appropriate

injunctive relief affording him a reasonably expeditious determination of his pending CRAB appeal.[1]

## II.     PARTIES

2.      Mr. Sorrentino is an individual, who resides and is domiciled in the state of Florida, and who is a citizen of that state.

3.      CRAB, although not a party to these proceedings, is a state agency created under Massachusetts law pursuant to *M.G.L.* c. 32, § 16 (4).  Its responsibilities include hearing administrative appeals involving the denial of SERS benefits.

4.      Upon information and belief, Uyen Tran is an assistant attorney general, who works in Boston, Massachusetts and is a resident of the commonwealth of Massachusetts.  Ms. Tran is a member and the current chair of CRAB, which consists of three members.

5.      Upon information and belief, Nicolle Melanie Allen is an attorney practicing law in Boston, Massachusetts, is a resident of the commonwealth of Massachusetts, and is a member of CRAB.

6.      Upon information and belief, Fariyda Mulrain is a resident of the commonwealth of Massachusetts, and a member of CRAB.

7.      The Board, although not a party to these proceedings, is a state agency created under Massachusetts law pursuant to *M.G.L.* c. 32.  It is charged with administering SERS benefits.

## III.     JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 *U.S.C.* § 1331, as the questions here presented arise under the statutes and constitution of the United States.

---

[1] Of course, should the court deem other relief appropriate, Mr. Sorrentino does not mean to suggest that it would somehow be precluded from affording the same.

6. Venue is proper in this district pursuant to 28 *U.S.C.* §1391 (b) (1) and (2) because the defendants can be considered "residents" of this district and because a substantial part, if not all, of the events that give rise to this claim occurred within this district.

## IV. BACKGROUND FACTS

7. Mr. Sorrentino was hired by the Massachusetts Department of Public Health ("**DPH**") in January 1980 to assist with the provisioning of newborn services at the Massachusetts State Laboratory in Jamaica Plain. During his tenure with DPH, Mr. Sorrentino became the administrator of that program.

8. From 1980 to 1990, and while employed at DPH, Mr. Sorrentino made regular contributions to SERS.

9. In June of 1990, at a point where he had ten and one-half years of creditable service, and at Mr. Sorrentino's request, Mr. Sorrentino obtained a refund from SERS of his existing retirement contributions.

10. Subsequent to that refund, however, Mr. Sorrentino continued to work in the same laboratory, under the same conditions, and with the same responsibilities he had had in 1990.

11. In 2000, and with no break in his service, Mr. Sorrentino was offered an opportunity to "buy back" his DPH services by fully paying back into SERS, with interest, that which had previously been refunded to him.

12. After completing his "buy back," Mr. Sorrentino reasonably believed that he was restoring his status as an employee covered by, and entitled to, SERS benefits.

13. The Board also agreed that Mr. Sorrentino's participation in the "buy back" had fully restored his participatory right to receive SERS benefits because on six (6) different occasions thereafter, *viz.* on March 4, 2000, June 4, 2000, April 30, 2007, March 11, 2011,

March 5, 2018, and November 27, 2018, SERS confirmed to Mr. Sorrentino, *in writing*, his entitlement to SERS benefits with respect to the contributions he previously had made, and then later replenished.

14. On October 20, 2018, Mr. Sorrentino applied to receive "superannuation" retirement benefits and, in connection with such application, provided notice that he would retire on November 10, 2018.

15. In response to that application and notification, Mr. Sorrentino was informed by the Board on November 11, 2018 – *i.e.*, three weeks after he applied for benefits and the day after he actually retired – that he would begin receiving his SERS benefits within 90 to 120 days of the date of his retirement.

16. On February 6, 2019, however, Nicola Favorito, the Board's executive director, wrote to Mr. Sorrentino (the "*Favorito Letter*") informing him that, in the Board's opinion, he was ineligible to retire. The Board thus further concluded that, despite its earlier contrary notifications to Mr. Sorrentino, he was not entitled to *any* SERS benefits.[2]

17. Mr. Sorrentino then began the prescribed process for grieving the Board's decision. In particular, and in accordance with the *Favorito Letter*, Mr. Sorrentino, by letter dated February 25, 2019, wrote to CRAB to contest the Board's decision. CRAB acknowledged receipt of Mr. Sorrentino's grievance on March 1, 2019.

18. It took over three (3) years for Mr. Sorrentino to be afforded a hearing in connection with his grievance. Specifically, on June 14, 2022, a relatively brief evidentiary hearing was conducted by Magistrate Kenneth Bresler.

---

2  Because this action concerns itself with the procedures employed by the Board and CRAB relative to the resolution of the herein-described dispute, and not the respective merits of the parties' claims and arguments, Mr. Sorrentino has here refrained from a detailed discussion of his entitlement to SERS benefits and, instead, simply reserves all of his rights in that regard.

19. Following the submission of post-hearing briefs on September 26, 2022, on February 24, 2023, Magistrate Bresler issued a decision denying Mr. Sorrentino's grievance. Of course, by this time, more than four (4) years had passed since the *Favorito Letter's* initial denial of Mr. Sorrentino's request for SERS benefits.

20. Mr. Sorrentino then timely filed with CRAB, on March 10, 2023, an appeal of the Board's denial of his grievance.

21. In response, CRAB informed the parties that the Board's response memorandum would be due on or before May 4, 2023.

22. On May 3, 2023, the Board requested a 60-day extension of time – through July 3, 2023 – to file its responsive memorandum. Mr. Sorrentino, especially given the delays that he had already experienced, would have preferred to substantively respond to that request, but CRAB granted the same twenty-three (23) minutes later without affording Mr. Sorrentino any opportunity to be heard.

23. The Board then missed, without filing any motion for a further extension of time, its July 3, 2023, filing deadline.

24. On July 10, 2023, after inquiry from Mr. Sorrentino's counsel regarding the Board's failure to timely file its responsive memorandum, CRAB, instead of acting on the Board's unexcused default, instead essentially invited the Board to seek yet another extension.

25. The Board accepted the invitation and asked CRAB for another 60-day extension of time. Mr. Sorrentino objected promptly and, on July 17, 2023, CRAB gave the Board until July 31, 2023, a total of 118 days, to submit its response. The Board met this deadline.

26. On July 31, 2023 Samuel Ades of CRAB informed the parties that the "matter is now ready for adjudication and has been added to CRAB's active cases docket. For any further questions please don't hesitate to contact me or Chair Tran."

27. CRAB's rules mandate that it decides appeals without a hearing based upon the parties' submissions. Consequently, on February 10, 2024, or more than five (5) years following the *Favorito Letter*, Mr. Sorrentino's undersigned counsel wrote to CRAB's Chair as follows:

> Chairman Tran, this matter was ready for adjudication and was added to CRAB's active cases docket more than five months ago on July 31 of last year. Mr. Sorrentino commenced the matter in October of 2018, more than five years ago. Might you have any idea as to when CRAB will issue its determination?"

28. On February 16, 2024, Mr. Ades replied:

> My apologies for the delayed reply as I have been ill and away from the office this week. In response to your status inquiry, the matter John Sorrentino v. State Board of Retirement, CR-19-0118 is currently #142 on the overall pending appeals list before CRAB.
>
> The pending appeals list consists of both disability and nondisability matters and are put in the order the appeals were made ready for adjudication. Please know that CRAB currently schedules two separate monthly board meetings – one addressing disability appeals and one addressing nondisability appeals. Because of this, I am unable to give you an estimated timeframe as to when CRAB would issue a decision in this matter. I hope that this update provides the petitioner some information relating to their appeal. While CRAB understands that this has been a long process for them, the Board truly appreciates everyone's patience and understanding throughout.

29. Mr. Sorrentino, through counsel, responded that same day:

> Thank you, Sam. I hope you are feeling better. Questions: of the 142 appeals that are pending, can you tell us how many are disability and how many of them (like Mr. Sorrentino's) are nondisability? Also, can you tell us how many (even approximately) nondisability appeals are considered each month?

30. As of the date of this complaint, no response has been received from CRAB to the further inquiries posed by counsel's February 16, 2024, correspondence.

**COUNT I – Mr. Sorrentino Is Being Denied Procedural Due Process**

31. Mr. Sorrentino respectfully incorporates the allegations of paragraphs 1-30 of this complaint, each as if fully set forth herein.

32. As of the date of this complaint, Mr. Sorrentino has been diligently pursuing his right to SERS benefits for over five (5) years.

33. Perhaps more importantly, there is, based upon the correspondence exchanged between Mr. Sorrentino's counsel and CRAB, a likelihood of significant further delays.

34. Mr. Sorrentino has a right, under the Fourteenth Amendment of the United States Constitution, to procedural due process with regard to the determination by CRAB of his dispute with the Board.

35. Put most simply, procedural due process includes, *inter alia*, the right to be heard in a reasonable manner and at a ***reasonable time***.

36. With more than five (5) years having elapsed since Mr. Sorrentino first sought to vindicate his right to receive SERS benefits, and with no apparent end in sight with respect to any final adjudication of that dispute, Mr. Sorrentino is being denied his right to procedural due process. More particularly, the existing state administrative system is not designed and/or administered in such a way as to afford him ***reasonably prompt*** relief.

37. Mr. Sorrentino's SERS benefits, as well as his claim in pursuit thereof, are property rights entitled to the protections of the Due Process Clause of the United States Constitution.

38. While Mr. Sorrentino has endeavored to avail himself of the protections afforded by the administrative process described above, such process, either by design or by the manner in which the same has been implemented, has and continues to deprive Mr. Sorrentino of his right to an adjudication of his dispute within a reasonable time, and the delays occasioned by such process are, in light of all of the relevant facts and circumstances, unjustified.

39. Each of the Defendants is responsible for the deprivation of due process set forth above in their official capacities.

### COUNT II – Violation Of 42 *U.S.C.* § 1983

40. Mr. Sorrentino respectfully incorporates the allegations of paragraphs 31-39 of Count I of this complaint, each as if fully set forth herein.

41. In depriving Mr. Sorrentino of his right to procedural due process as provided for in the Fourteenth Amendment to the United States Constitution, the Defendants are acting under color of state law.

42. The actions of the Defendants in failing to hear and decide the above-referenced dispute within a reasonable period of time are the actual cause of Mr. Sorrentino's injury.

43. Each of the Defendants is responsible for the deprivation of due process set forth above in their official capacities.

**WHEREFORE**, Plaintiff asks that this Court afford him the following relief:

### AS TO COUNT I:

A. Grant Plaintiff a preliminary injunction requiring the Defendants to adjudicate the within-described dispute within thirty (30) days or such time as the Court deems, in light of all of the relevant circumstances, reasonable and proper;

B. Grant Plaintiff a permanent injunction requiring the Defendants to adjudicate the within-described dispute within thirty (30) days or such time as the Court deems, in light of all of the relevant circumstances, reasonable and proper;

C. Enter an award of costs as allowed by law; and

D. Afford such other and further relief as this Court deems just and proper.

### AS TO COUNT II:

A. Grant Plaintiff a preliminary injunction requiring the Defendants to adjudicate the within-described dispute within thirty (30) days or such time as the Court deems, in light of all of the relevant circumstances, reasonable and proper;

B. Grant Plaintiff a permanent injunction requiring the Defendants to adjudicate the within-described dispute within thirty (30) days or such time as the Court deems, in light of all of the relevant circumstances, reasonable and proper;

C. Award Plaintiff his reasonable counsel fees as allowed by law;

D. Enter an award of costs as allowed by law; and

E. Afford such other and further relief as this Court deems just and proper.

JOHN SORRENTINO

By his Attorneys,

Dated: May 10, 2024

/s/ *Richard D. Glovsky*
Richard D. Glovsky (BBO# 195820)
Donald E. Frechette (BBO #547293)
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA  02199
617-239-0100
richard.glovsky@lockelord.com
donald.frechette@lockelord.com

and

- 11 -

        Yeva Mikaelyan (pro hac vice)
        Yeva.Mikaelyan@lockelord.com
        Locke Lord LLP
        300 S. Grand Ave., Suite 2600
        Los Angeles, CA 90071
        T: 213-687-6726

## **CERTIFICATE OF SERVICE**

      I, Richard D. Glovsky, certify that on May 10, 2024, this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the NEF and paper copies will be sent to any indicated as non-registered participants.

        */s/ Richard D. Glovsky*
        Richard D. Glovsky

137400376v.2